**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CONSOL PENNSYLVANIA COAL COMPANY, LLC, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAHALAXMI CONTINENTAL LIMITED, MAHALAXMI INDIA PRIVATE LIMITED, MAHALAXMI ASSOCIATES PRIVATE LIMITED, MAA KAMAKHYA COKE INDUSTRIES, MAHALAXMI WELLMAN FUEL LLP, and UNIVERSAL OVERSEAS PTE LTD., | ) ) ) ) ) ) ) ) | Civil Action No. 22-781 |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This action concerns the parties' dispute as to whether they formed a contract for shipments of coal.  Plaintiff, Consol Pennsylvania Coal Company, LLC ("Consol"), contends that while the parties did negotiate terms, no such contract was ever formed.  Defendants,[1] a group of affiliated entities collectively referred to herein as the "Mahalaxmi Group," maintain that there is such a contract and that it contains an arbitration provision obligating the parties to adjudicate their dispute under the auspices of the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in New York, New York. The Mahalaxmi Group made a Demand for Arbitration ("Demand") at AAA Case No. 01-22-0001-9160,  (Docket Nos. 13-3; 19), prompting Consol to commence this action by filing a Complaint for Declaratory Judgment and Request for Injunctive Relief ("Complaint").  (Docket No. 1).  Consol then moved for issuance of a Temporary

---

[1]     Defendants are Mahalaxmi Continental Limited, Mahalaxmi India Private Limited, Mahalaxmi Associates Private Limited, MAA Kamakhya Coke Industries, Mahalaxmi Wellman Fuel LLP, and Universal Overseas PTE Ltd.

Restraining Order and/or Preliminary Injunction, (*see* Docket No. 12), which the Court granted as to the Temporary Restraining Order, thereby temporarily enjoining the Mahalaxmi Group and the AAA from proceeding with an arbitration against Consol (the "TRO").  (*See* Docket No. 21).

Presently before the Court is the Mahalaxmi Group's Motion to Dismiss Complaint and Vacate TRO or Stay Proceedings Pending (and Compel) Arbitration (the "Motion"), which is opposed by Consol.  (*See* Docket Nos. 30-34, 39, 42).  The Mahalaxmi Group argues that the Court should vacate the TRO and dismiss Consol's Complaint for lack of personal jurisdiction.  (Docket No. 30, ¶ 1).  In the alternative, the Mahalaxmi Group urges the Court to stay this case and compel the parties to arbitration.  (*Id.*, ¶ 2).  After careful consideration of the parties' arguments in light of the prevailing legal standards, the Mahalaxmi Group's Motion will be denied.

## I.    FACTUAL BACKGROUND[2]

Consol is a producer and exporter of high-Btu bituminous thermal coal with its principal place of business in Canonsburg, Pennsylvania. (Docket Nos. 1, ¶ 1; 20-7; 34-1).  The Mahalaxmi Group, which is comprised of affiliated foreign companies located in either India or Singapore, imports and uses thermal coal.  (Docket Nos. 1, ¶ 2; 20-7).

Robert Braithwaite, Jr. ("Braithwaite") is Consol's Senior Vice President for Marketing and Sales and at all relevant times was Consol's Vice President for Marketing and Sales.  (Docket No. 34-1, ¶¶ 5, 6, 7).  His office is located at Consol's headquarters in Canonsburg, Pennsylvania, where he interacted with potential purchasers to discuss and negotiate terms and conditions for coal purchase orders.  (*Id.*, ¶ 7).  Braithwaite interacted with executives of the Mahalaxmi Group and its coal brokers (PGM Commodity Services, LLC

---

[2]     The factual background is derived from the averments contained in the Complaint and the affidavit and unsworn declarations proffered by the parties. (Docket Nos. 1; 20; 31; 32; 34-1; 39-1). Any disputed facts are construed in Consol's favor.  *See Metcalfe,* 566 F.3d at 330.

("PGM") and Xcoal Energy and Resources ("Xcoal"))[3] to discuss and negotiate terms and conditions for coal purchase orders.  These Mahalaxmi Group executives include Sandeep Bharat ("Bharat") and Naveen Kuman Gupta ("Gupta").  Bharat is Mahalaxmi Continental Limited's Vice President for Procurement and Coal, and his duties include procuring materials such as coal and coke.  Gupta was, and is, the Mahalaxmi Group's chief executive officer.  (Docket No. 34-1, ¶¶ 8, 9, 10, 15).

The Mahalaxmi Group, through Gupta, Bharat, and their broker Akshay, initiated negotiations with Braithwaite for the purchase of coal to be sourced, prepared, and shipped from Consol's mines in Pennsylvania.  (Docket No. 34-1, ¶¶ 17, 18, 19, 20).  These negotiations occurred in person in Canonsburg and elsewhere,[4] and by telephone, email, WhatsApp and text messages, resulting in the following three agreed upon Purchase Orders between 2017 and 2020:

---

[3]     Akshay Mehta (referred to by the parties and herein as "Akshay") worked as an employee of various coal brokers, including Xcoal and PGM.  Akshay was employed by Xcoal from February 2018 until sometime in 2020, and he worked from Xcoal's Latrobe, Pennsylvania location, while living in Upper St. Clair (a suburb of Pittsburgh).  Xcoal had an exclusive marketing agreement with Consol through which Xcoal purchased all coal available for sale into the international market from Consol, and the coal it purchased was free to be marketed to any Xcoal customer outside of the United States and Canada.  Akshay initially introduced Consol to the Mahalaxmi Group and was directly involved in all prior and prospective purchase agreements between them.  (Docket No. 34-1, ¶¶ 8, 11, 12, 13, 14).

[4]     Representatives of the Mahalaxmi Group met with Braithwaite in Canonsburg, Pennsylvania on at least two occasions to discuss business with Consol.  (Docket Nos. 34-1, ¶¶ 25, 27; 34-2; 34-3; 34-7).  The parties also met elsewhere in the United States.  For instance, on July 24, 2017, Bharat, Gupta, and Sapna Singhal traveled to Baltimore, Maryland, on behalf of the Mahalaxmi Group to visit Consol's shipping terminal.  (Docket Nos. 34-1, ¶ 24; 34-2).  Later that same week, on July 27, 2017, Bharat, Gupta, and Akshay met with Braithwaite in Canonsburg, Pennsylvania, to discuss business between Consol and the Mahalaxmi Group and shortly thereafter executed Purchase Order No. 09-2017M.  (Docket Nos. 34-1, ¶¶ 25, 26; 34-2; 34-3).  Then, on January 25, 2020, Braithwaite had dinner in Canonsburg with Bharat, Gupta, and Akshay to discuss purchasing future shipments of coal from Consol because Xcoal had stopped selling coal to the Mahalaxmi Group.  (Docket Nos. 34-1, ¶ 27; 34-7).  Braithwaite also met with representatives of the Mahalaxmi Group at conferences in Houston, Texas, and Phoenix, Arizona.  (Docket Nos. 34-1, ¶ 28; 34-6).  Although the Mahalaxmi Group proffers a declaration from Bharat averring that none of its representatives visited Pennsylvania for the negotiation or execution of any contracts between the parties, it then proffers a second declaration from Bharat averring that the parties did have discussions in Canonsburg prior to their August 7, 2017 purchase order and that they visited Canonsburg again in January 2020 to be assured of Consol's ability to deliver its contractual commitments before finalizing and executing its third purchase order on May 29, 2020.  (Docket Nos. 31; 39-1, ¶¶ 10, 16).

No. 06-2017M dated May 30, 2017; No. 09-2017M dated August 7, 2017; and No. 05-2020 dated May 29, 2020.  (Docket Nos. 1, ¶ 3; 20-7; 34-1, ¶¶ 16, 22, 25, 27, 28, 29).

In May 2021, representatives of the Mahalaxmi Group contacted Braithwaite to purchase two or three additional shipments of coal, and the parties then exchanged numerous emails, telephone calls, and WhatsApp messages throughout May and June 2021.  (Docket No. 34-1, ¶¶ 23, 31).  During this time, Braithwaite transmitted a draft of Purchase Order No. 08-2021M to the Mahalaxmi Group, along with a disclaimer, stating:

> This email is for your information only [and]is not intended to be legally binding.  CONSOL will not have any legally binding obligation until execution by both parties of formal contract documents, all of the terms of which, including the terms herein, must first have been reviewed and approved by CONSOL Energy Inc.'s Risk Management Committee (RMC) and, if required by CONSOL's authority limitations, its Board of Directors.

(Docket No. 1, ¶ 20).  Consistent with this disclaimer, Braithwaite contends that the parties never consummated this fourth putative purchase order because Consol's RMC did not approve the deal being negotiated.  (Docket Nos. 1, ¶¶ 37-42; 20-15).  Conversely, the Mahalaxmi Group asserts that the parties did consummate the fourth putative purchase order and ultimately demanded arbitration thereunder.  (Docket Nos. 1; 20-1; 20-2; 20-3; 20-4; 20-5; 20-6; 20-7; 20-8; 20-9; 20-10; 20-11; 20-12; 20-13; 20-14; 20-15; 34-1, ¶¶ 23, 31).  The Mahalaxmi Group's Demand for arbitration prompted Consol to commence this action seeking a declaratory judgment that no such agreement has been formed.  The Mahalaxmi Group responds by challenging this Court's personal jurisdiction, and alternatively arguing that this action should be stayed and the parties should be compelled to arbitrate.

## II.   STANDARD OF REVIEW

The Mahalaxmi Group initially seeks to vacate the TRO and further urges the Court to dismiss Consol's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).   When a defendant raises the defense of the court's lack of personal jurisdiction, the plaintiff has the burden of coming forward with facts to establish that jurisdiction is proper.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). "[O]nce a defendant has raised a jurisdictional defense," the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper."  *Id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).   If the district court does not hold an evidentiary hearing, as in this case, a plaintiff "need[] only establish a prima facie case of personal jurisdiction."  *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citation omitted).   "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation marks and citation omitted). Finally, "in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)).

## III.   DISCUSSION

### A.  This Court Has Personal Jurisdiction Over the Mahalaxmi Group.

Personal jurisdiction is based upon general jurisdiction or specific jurisdiction.  *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (citations omitted). General jurisdiction exists when a defendant's contacts with the forum state are "so continuous

and systematic as to render [it] essentially at home [there]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). On the other hand, specific jurisdiction exists when a plaintiff's claim arises out of a defendant's forum-related activities such that the defendant "should reasonably anticipate being haled into court there." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Consol asserts that specific jurisdiction exists over the Mahalaxmi Group in this instance. (Docket No. 34 at 7).

The Court "typically exercises personal jurisdiction according to the law of the state where it sits, in this case Pennsylvania." *Cruickshank-Wallace v. CNA Fin. Corp.*, 769 F. App'x 77, 79 (3d Cir. 2019) (citing Fed. R. Civ. P. 4(k)(1)(A)). Under Pennsylvania law, specific personal jurisdiction over a nonresident defendant is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution." 42 PA. CONS. STAT. § 5322(b); *see O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing § 5322(b)). Accordingly, Consol must establish that the Mahalaxmi Group has "certain minimum contacts with . . . [the Commonwealth of Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether there are sufficient minimum contacts, the Court must determine whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The Third Circuit Court of Appeals has condensed the specific jurisdiction analysis, which "focuses on the relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 571 U.S. 277, 284 (2014), into three parts.  First, "the defendant must have 'purposefully directed [its] activities' at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472).  Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Third, "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.' " *Id.* (quoting *Burger King*, 471 U.S. at 476).

The Court of Appeals has made clear that the first two parts of the analysis assess whether a defendant has the requisite minimum contacts with the forum.  *D'Jamoos*, 566 F.3d at 102.  "The threshold requirement is that the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' " *Id.* at 103 (quoting *Hanson*, 357 U.S. at 253).  To meet this requirement, a defendant's contacts must amount to "a deliberate targeting of the forum." *Id.* (quoting *O'Connor*, 496 F.3d at 317).  In analyzing whether the requirement is satisfied in commercial matters such as this case, the Supreme Court has provided the following guidance:

> . . . [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)).  Accordingly, courts are instructed to take a "highly realistic" approach to analyzing

7

minimum contacts that looks to, *inter alia,* "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Mellon Bank*, 960 F.2d at 1224 (quoting *Burger King*, 471 U.S. at 479); *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990).

Accepting as true Consol's particularized allegations pled in its Complaint, along with the averments in Braithwaite's affidavit, and construing any disputed facts in Consol's favor, *see Metcalfe*, 566 F.3d at 330, the Court finds that Consol has sustained its burden to establish a *prima facie* case that the Court may properly exercise specific personal jurisdiction over the Mahalaxmi Group here.  On the present record, it is evident that the Mahalaxmi Group purposefully availed itself of the privilege of conducting commercial activities within Pennsylvania as shown by the following:

- Mahalaxmi Group executives worked with a coal broker located in western Pennsylvania who facilitated discussions with Consol that led to two in-person meetings in Pennsylvania and ultimately to three coal purchase agreements through which the Mahalaxmi Group acquired coal that had been sourced, prepared, and shipped from Pennsylvania.  (Docket Nos. 1, ¶¶ 14, 26; 20-7; 31-4, ¶¶ 8, 11, 12, 13, 14, 22).

- The Mahalaxmi Group's communications regarding the negotiation and formation of these prior agreements were directed to Braithwaite at Consol's headquarters in Canonsburg, Pennsylvania, and these agreements provided that the Mahalaxmi Group was to provide Consol contractual notice at its Pennsylvania headquarters.  (Docket Nos. 1, ¶ 26; 20-7).

- The Mahalaxmi Group was to make payments under the agreements to Consol's bank located in nearby Pittsburgh, Pennsylvania.  (*Id.*).

- In the lead up to executing the second of these three coal purchase agreements, Mahalaxmi Group representatives traveled to Consol's headquarters in Canonsburg to discuss "future opportunities" and "creating a win win situation for our future business" and then returned for a dinner meeting prior to entering into the third coal purchase agreement.  (Docket Nos. 34-1, ¶¶ 25, 27; 34-2; 34-4; 34-5; 34-7).

- The Mahalaxmi Group's interactions and course of dealing with Consol in the negotiation, execution, and performance of their first three coal purchase agreements formed the basis for the relationship between the parties that led to their negotiations for a fourth coal purchase agreement that is the subject of this action, which commenced when Bharat contacted Braithwaite to inquire about the Mahalaxmi Group's desire to purchase three more shipments of coal.  (Docket Nos. 31, ¶ 11; 34-1, ¶ 30).

The foregoing conduct by the Mahalaxmi Group shows that it has had repeated and purposeful contacts with Consol in Pennsylvania over a period of years such that it should reasonably anticipate being haled into court here. There is nothing random, fortuitous, or attenuated about the Mahalaxmi Group's contacts with Pennsylvania.  Rather, these contacts have led to the formation and performance of at least three recent coal purchase agreements emanating from Pennsylvania and spawned negotiations towards a fourth putative agreement.  Consol's Complaint arises out of, or relates to, the parties' interactions and negotiations for this fourth putative agreement. The Mahalaxmi Group directed many communications to its coal broker and to Consol, both operating in Pennsylvania, and physically visited Pennsylvania to discuss current and prospective business with Consol on two occasions.  Accordingly, the Court finds that the Mahalaxmi Group has had the requisite minimum contacts with the forum and that Consol's Complaint relates to or arises out of those contacts.  *Burger King*, 471 U.S. at 472-76; *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 149-50 (3d Cir. 1992) (holding that telephone calls and correspondence sent into New Jersey from Louisiana by the representative of a Louisiana real estate developer, coupled with a meeting in New Jersey to facilitate the closing of a loan, provided the minimum contacts needed to satisfy due process).

Having determined that sufficient minimum contacts exist, the Court now considers whether exercising personal jurisdiction over the Mahalaxmi Group would "comport with fair play and substantial justice." *O'Connor*, 496 F.3d at 324.  The existence of minimum contacts makes

jurisdiction presumptively constitutional, so the Mahalaxmi Group "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing *Burger King*, 471 U.S. at 477). The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among these factors are "the burden on the defendant, the interests of the forum State, [ ] the plaintiff's interest in obtaining relief[,] . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies[,]" as well as "[t]he procedural and substantive interests of other nations." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113, 115 (1987) (internal quotation marks and citation omitted).

The Mahalaxmi Group has not demonstrated that being subject to the Court's personal jurisdiction here would not comport with fair play and substantial justice or that it otherwise would be unreasonable. First, Pennsylvania has a valid interest in affording its resident businesses, such as Consol, a forum to adjudicate commercial claims or related arbitral demands made by out-of-state or foreign businesses arising from or related to such foreign parties' Pennsylvania contacts. *Mesalic*, 897 F.2d at 702 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (noting that a state frequently will have a "manifest interest in providing effective means of redress for its residents")). And, while the Court is mindful of the burdens that would be placed on the Mahalaxmi Group if required to adjudicate in a foreign country, *Asahi*, 480 U.S. at 114, the Mahalaxmi Group's purposeful contacts with Pennsylvania demonstrate its ability to seek out and do business here. The record is otherwise devoid of information to indicate that adjudicating here would be unfair, unduly burdensome, or unreasonable. Moreover, the Court notes that the Mahalaxmi Group seeks to arbitrate the parties' dispute in the United States and there appears to

be no procedural or substantive interests of other nations (such as India or Singapore) that would urge or suggest a more appropriate international forum. Finally, in this Court's estimation, this forum is the most sensible and efficient place to adjudicate this matter. Accordingly, exercising personal jurisdiction over the Mahalaxmi Group in the present case does not violate notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476.

In sum, the Court has personal jurisdiction over the Mahalaxmi Group and thus will deny its Motion to Dismiss Consol's Complaint. Likewise, the Court will not vacate the TRO because the Mahalaxmi Group has provided no basis other than the lack of personal jurisdiction to challenge or undermine the Court's findings that Consol satisfied each of the four elements required by *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). (*See* Docket No. 21).

**B.  A Stay of This Case to Compel and Complete Arbitration is Unwarranted.**

The Mahalaxmi Group alternatively moves this Court to compel arbitration and to stay this case pending completion of the arbitration. Such action is not warranted based on the present record.

 The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes a strong federal policy in favor of the resolution of disputes through arbitration. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citing *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). However, the "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.' " *Id.* (quoting *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Indeed, "[b]efore compelling a party to arbitrate . . . a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain*

*Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (citation omitted); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

The Mahalaxmi Group seeks to compel arbitration improvidently pursuant to Federal Rule of Civil Procedure 12(b)(2) (lack of personal jurisdiction).  Rather, when ruling on a motion to compel arbitration, the Court should use either a motion to dismiss or a motion for summary judgment standard.  A Rule 12(b)(6) standard should be used "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause . . . ."  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted).  However, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."  *Id.* (internal quotation marks and citation omitted).  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time evaluating the motion under the Rule 56 summary judgment standard.  *Id.*

Here, the crux of the parties' dispute is whether they formed a coal purchase agreement containing an arbitration provision, which is the essence of Consol's Complaint seeking a declaratory judgment that no such agreement exists. (Docket Nos. 1; 20).  As alleged in the Complaint, the parties were negotiating the terms of a purchase order for shipments of coal, but they never finalized their agreement because Consol's RMC rejected the deal.  (Docket No. 1, ¶ 39).  The Mahalaxmi Group counters that the parties did reach an agreement as reflected in a written purchase order, and that the purchase order contains an arbitration provision, at Section

12

11.10, directing the parties to arbitrate "all claims, disputes, or controversies arising out of or relating to this Agreement or the breach, termination, or validity thereof . . . ." (Docket Nos. 1; 20-1 at 2-13). On the current record, the Mahalaxmi Group's alternative motion seeking to compel arbitration "does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate." *Guidotti*, 716 F.3d at 774 (internal quotation marks and citation omitted); *Schultz v. Midland Credit Mgmt., Inc.*, Civ. No. 16-4415, 2019 WL 2083302, at *7 (D.N.J. May 13, 2019) (denying motion to compel arbitration pending further development of factual record). Accordingly, the Court concludes that the Rule 12(b)(6) standard is inappropriate, and that discovery is necessary on whether or not the parties formed a valid agreement. After completing discovery, the Mahalaxmi Group may renew its motion to compel arbitration, if warranted, which will be evaluated under the Rule 56 standard.[5] *Guidotti*, 716 F.3d at 774-75.

---

[5]     The Mahalaxmi Group seemingly contends that an arbitrator, and not the Court, should decide the existence, scope, and validity of the arbitration agreement and the concomitant arbitrability of the underlying claim by misplacing its reliance on AAA Rule No. 7, which states that an arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Docket Nos. 32-1; 33). The Mahalaxmi Group is incorrect on this point. Rather, the Court has "the authority to adjudicate formation challenges – even if there is a delegation clause – unless the parties have clearly and unmistakably referred formation issues to arbitration in a written contract whose formation is not in issue." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). Here, the parties dispute the formation of a contract. Regardless, even if the Mahalaxmi Group can establish that the parties agreed to the terms contained in the  fourth putative purchase order, the arbitration provision contained therein contains no such delegation language. Again, on the present record, there is no basis to delegate the adjudication of contract formation to an arbitrator.

IV. **CONCLUSION**

For the reasons set forth herein, the Mahalaxmi Group's Motion is denied as to its requests to vacate the TRO and to dismiss Consol's Complaint.  The Motion is denied without prejudice as to the Mahalaxmi Group's alternative request to stay this action and compel arbitration.

An appropriate order follows.

_s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge

Date:           February 9, 2023

cc/ecf:         All counsel of record

14